IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DAVID W. DAVIS, | Case No. 6:14-cv-1910-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Alan Stuart Graf, ALAN STUART GRAF P.C., 208 Pine St., Floyd, VA 24091. Of Attorneys for Plaintiff.

Billy J. Williams, Interim United States Attorney, and Janice E. Herbert, Assistant United States Attorney, U.S. Attorney's Office, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Erin F. Highland, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 Mailstop 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

David W. Davis ("Plaintiff" or "Davis") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying his application

for disability insurance benefits under Title II of the Social Security Act. 42 U.S.C. §§ 401-34.

For the following reasons, the Commissioner's decision is reversed and remanded for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Davis protectively filed an application for disability insurance benefits on January 18, 2011, alleging disability beginning February 19, 2008. AR 16, 133. He was 55 years old at the alleged disability onset date. *See* AR 133. He alleges disability due to the following medical conditions: depression, anxiety, a learning disorder, arthritis, compressed discs, back and leg pain, heart disease, and chronic pain from heart surgery. AR 165. The Commissioner denied Davis's application initially on July 27, 2011 and upon reconsideration on November 7, 2011. AR 16, 87, 99. Davis requested a hearing before an Administrative Law Judge ("ALJ"), and the hearing was held on March 20, 2013. AR 31. After considering all the evidence in the record, the ALJ concluded that Davis is not disabled under the Social Security Act. AR 16-24. The Appeals Council considered the record but declined to review the decision, making the ALJ's decision the final order of the Commissioner. AR 1. Davis now seeks judicial review of that decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.      Is the claimant performing "substantial gainful activity?" 20 C.F.R.
        §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
        significant mental or physical duties done or intended to be done for pay
        or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
        such work, she is not disabled within the meaning of the Act. 20 C.F.R.
        §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
        substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's
        regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
        impairment or combination of impairments is "severe" if it significantly
        limits the claimant's physical or mental ability to do basic work activities.
        20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
        this impairment must have lasted or be expected to last for a continuous
        period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
        claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
        §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
        impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the
        impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
        then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
        416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
        the listed impairments, the analysis continues. At that point, the ALJ must
        evaluate medical and other relevant evidence to assess and determine the
        claimant's "residual functional capacity" ("RFC"). This is an assessment
        of work-related activities that the claimant may still perform on a regular
        and continuing basis, despite any limitations imposed by his or her
        impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),
        416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
        proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC
        assessment? If so, then the claimant is not disabled. 20 C.F.R.
        §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
        his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience,
        is the claimant able to make an adjustment to other work that exists in
        significant numbers in the national economy? If so, then the claimant is
        not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
        404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
        she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ began his opinion by noting that Davis met the insured status requirements of the Social Security Act through December 31, 2013. AR 16, 18. The ALJ then applied the sequential process. AR 16-24. At step one, the ALJ determined that Davis had not engaged in substantial gainful activity after February 19, 2008, the alleged onset date. AR 18. At step two, the ALJ determined that Davis has the following severe impairments: arteriosclerotic heart disease, status post coronary heart bypass graft, hyperlipidemia, and degenerative disc disease of the lumbar spine. *Id.* The ALJ gave "great weight" to the opinion of Dr. Paula Belcher, Ph.D., who opined that Davis reported trying to commit suicide and experiencing depression. AR 19. Dr. Belcher ultimately concluded that Davis has a major depressive disorder but seemed "manipulative" in reports of suicidal ideation. *Id.* The ALJ determined that although Davis's

depressive disorder is medically determinable, his depressive disorder does not rise to the level of a severe impairment. AR 18-20.

At step three, the ALJ found that Davis did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 20. The ALJ then evaluated medical and other relevant evidence to assess and determine Davis's RFC. Based on objective medical findings and "inconsistent statements regarding his symptoms to medical providers and to the undersigned during the hearing," the ALJ found that Davis's credibility was diminished. AR 22. The ALJ gave the State agency medical consultants' opinions (AR 74-85) "great weight because they are generally consistent with the overall evidence contained in the record." AR 23. The ALJ gave the assessment of Dr. James McHan, M.D., "little weight" because Dr. McHan's opinion "gives too much deference to the claimant subjective complaints" and "is inconsistent with the overall evidence in the record." *Id.* Based on the evidence, the ALJ concluded that Davis retained the RFC to perform a reduced range of light work. AR 20. According to the ALJ, Davis is able to: (1) lift, carry, push, and pull 10 pounds occasionally and 10 pounds frequently; (2) stand and/or walk six hours in an eight-hour workday; (3) sit six or more hours in an eight-hour workday; (4) occasionally climb; (5) never climb ladders, ropes, and scaffolds; (6) balance, occasionally stoop, occasionally crouch, never kneel, never crawl, with no ability to tolerate exposure to hazards such as unprotected heights or moving machinery. AR 20-21.

Considering Davis's RFC, at step four, the ALJ found that Davis is capable of performing past relevant work as a telephone solicitor. AR 23. Therefore, the ALJ concluded that Davis is not disabled. AR 24.

**DISCUSSION**

Davis argues that the ALJ erred by: (1) failing to consider and credit determinations by the Oregon Office of Vocational Rehabilitation Services ("VRS") that Davis was "Most Significantly Disabled," (2) giving insufficient reasons for discounting Davis's subjective complaints; (3) rejecting the medical opinion of Dr. James McHan, M.D.; and (4) determining at step two that Davis's depression was not severe.

**A.  Evidence from VRS**

In December 2010, Davis sought rehabilitation services from VRS. AR 219. On February 2, 2011, VRS issued a report entitled "Eligibility Determination." AR 213. The VRS counselor, Tessa M. Siebert, M.A., C.R.C., indicated that Davis had a "Disability Priority" of "Most Significantly Disabled—Priority 1." *Id.* Ms. Siebert described Davis's impediments to employment, including his inability to interact in a socially acceptable manner at work and his inability to manage his own physical, emotional, and safety needs. *Id.* She noted that Davis "consistently thinks about suicide." Ms. Siebert stated that she and Davis had determined that Davis "requires and can benefit from VR services to prepare for, enter into, engage in, or retain gainful employment." AR 214.

On March 7, 2011, in a report entitled "Disabilities," Ms. Sierbert noted that Davis had an impairment due to "Major Depression, recurrent." AR 216-17. In this March 2011 report, Ms. Siebert described a mental health evaluation done by Christine Rogers, MA, in which Ms. Rogers relayed Davis's reports of suicidal ideations and stated that Davis was "struggling to

stabilize his depression and anxiety," possibly due to "considerable issues regarding [the loss of his son]." AR 216.[1]

On April 21, 2011, Ms. Siebert closed Davis's case, stating that Davis "has a long history of severe and persistent mental health barriers that have caused years of personal and vocational barriers." AR 211. Ms. Siebert further stated that during her work with Davis, his "mental health barriers became increasingly symptomatic with depression and suicidal inhalation [*sic*]." *Id.* In the ALJ's decision, the ALJ did not discuss the evidence from VRS.

Davis argues that the ALJ erred by ignoring all information from VRS. The Commissioner responds that the VRS reports do not constitute probative evidence because the reports are not formal disability determinations. Additionally, argues the Commissioner, the reports make no mention of when Ms. Rogers made her evaluation and Davis stopped seeking mental health treatment in April 2008 (*see* AR 228), meaning that Ms. Rogers's evaluation likely concerns a period before the disability onset date. The Commissioner argues that the ALJ's failure to consider reports from VRS therefore does not constitute reversible error.

An ALJ must consider disability determinations made by other agencies. Social Security Ruling ("SSR") 06-03p, *available at* 2006 WL 2329939. The VRS, however, "makes eligibility determinations, not disability determinations." *Parker v. Colvin*, 2014 WL 3672923, at *2 (D. Or. July 22, 2014). That the February 2011 report states that vocational rehabilitation would help Davis prepare for or retain gainful employment shows that a VRS finding of disability "is not the kind of formal finding of disability made by the [Social Security Administration]." *Link v. Astrue*, 2012 WL 5037029, at *11 (D. Or. Oct. 16, 2012). The determination that Davis was

---

[1] As Davis notes, Ms. Rogers is mentioned in the VRS reports and in the records of Volunteers in Medicine Clinic (AR 248), but her treatment records do not appear to be part of the administrative file.

"Most Significantly Disabled" indicates not that Davis was formally disabled and unable to work, but only that VRS deemed him "qualified to receive a certain level of vocational rehabilitation services." *Id.* The ALJ was not required to consider the VRS's finding of disability.

An ALJ must, however, consider competent evidence from lay witnesses unless the ALJ decides to disregard such testimony, in which case "he must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). Lay testimony regarding a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). An ALJ "need not discuss all evidence presented to [him or] her. Rather, [he or] she must explain why 'significant probative evidence has been rejected.'" *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir.1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)). In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

Ms. Sierbert's statements regarding Davis's symptoms and how his impairments affect his ability to work constitute competent, probative evidence from a lay witness.[2] The ALJ gave no reasons, germane or otherwise, for rejecting the evidence from Ms. Siebert. Ms. Sierbert's reports conflict with the evaluation done by Dr. Belcher, Ph.D. Dr. Belcher discussed Davis's

---

[2] Davis does not argue that Ms. Sierbert is an acceptable medical source. *See* 20 C.F.R. § 404.1513(a). Nor does Davis contend that Ms. Siebert became an acceptable medical source by "working closely with, and under the supervision" of another person who constituted an acceptable medical source. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011).

mental health and history of suicidal ideations, but Dr. Belcher noted that Davis "seems to be manipulative at times by his own admission" with regard to his "history of suicide gestures" and "appears to be able to distract himself from feeling depressed at times." AR 398. In contrast, Ms. Sierbert's reports suggest that Davis's depression had begun to worsen recently and that he displayed a greater degree of consistency and sincerity about his suicidal ideations. *See* AR 214 ("He consistently thinks about suicide.").

When a court cannot "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination," the court must reverse based on the ALJ's failure to properly discuss competent lay testimony favorable to the claimant. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). The Court cannot so conclude here, particularly in light of the ALJ's determination that Davis's depression was not severe. The ALJ's silent discounting of evidence from VRS constitutes reversible error.

## B.  Davis's Credibility

Davis argues that the ALJ failed to give legally sufficient reasons for discounting Davis's subjective testimony and statements. There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid[,] [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment . . . ." *Smolen*, 80 F.3d at 1284. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

At the hearing, Davis testified that in February 2008, he had an anxiety attack and left his job at Royal Caribbean. AR 35. He testified that following the anxiety attack, he has rarely left his property, where he lives with his wife. AR 37. He interacts with people other than his wife perhaps once a month. AR 38. At times, according to Davis, he feels better and goes shopping with his wife in town about once a week. *Id.* Other times, he may go into town "two or three times a week." *Id.* He reported feeling "really depressed" after vocational rehabilitation did not work for him. *Id.* He said he entertains thoughts of suicide frequently. AR 39.

Regarding his physical symptoms, Davis testified that he experiences numbness and pain radiating down his left side. AR 40. If he overexerts himself, the pain in his legs becomes severe. AR 42. His hip causes him pain to the point that he experiences difficulty walking. AR 40. He has difficulty rising from a kneeling position and sometimes has trouble sleeping because of the pain. *Id.* Davis stated that he has arthritis in both hands, which affects his ability to open containers and pick up small items. AR 41-42. He testified that he takes walks during the day to keep himself active. AR 44. He keeps chickens and sometimes cleans the chicken coop, but he experiences pain while doing that. *Id.* He cannot spend more than a couple hours on his feet without sitting. AR 48. He sometimes lies down in the mornings for 15 or 30 minutes. AR 49. In

the afternoons, he lies down for "no more than an hour." *Id.* In the evenings, he lies down for about two hours. *Id.* He does not have medical insurance, which has affected his ability to see a doctor. AR 43.

After considering the evidence, the ALJ found that Davis's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 21. The ALJ also found, however, that Davis's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." AR 21. The ALJ gave three reasons for discounting Davis's statements: (1) Davis's testimony about his symptoms conflicted with his medical records; (2) he provided inconsistent statements regarding his symptoms to medical providers and the ALJ during the hearing; and (3) his admitted activities of daily living diminished his credibility regarding the extent of his functional limitations. AR 22.[3]

The ALJ gave the following facts in support of his assertion that Davis's testimony conflicted with the medical records. On January 19, 2011, Davis complained of chest pain on his left side. AR 22. He also reported some numbness in his hands and feet. *Id.* Upon examination,

---

[3] These three reasons are given following the ALJ's broad statement that Davis is not fully credible and a factual summary of the evidence that led the ALJ to find Davis less than credible. That the ALJ gave specific reasons for discounting Davis's testimony only after giving a summary of the evidence that diminished Davis's credibility is irrelevant. *Brown-Hunter v. Colvin*, cited by Davis, is not to the contrary. 806 F.3d 487 (9th Cir. 2015). There, the Ninth Circuit held "that an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Id.* at 489. The Ninth Circuit stated that an ALJ is required "to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination." *Id.* Here, the ALJ did more than recite the evidence in support of his residual functional capacity determination. The ALJ specified the testimony he found not credible and provided specific reasons why he found the testimony not credible. *See* AR 21-22.

however, he walked without difficulty. AR 22. Inconsistent with disabling pain, Davis reported

to physicians in both January 2011 and May 2011 that he walked up to two miles a day. *Id.* (*see*

AR 381, 389). In January 2011, Davis also stated that he can work on his property "without a

whole lot of limitations." *Id.* (quoting AR 381). The ALJ further noted that when Davis sought

emergent treatment for left pectoral pressure and dizziness in November 2006, "his chest

discomfort could not be reproduced." AR 21. Although Davis stated that his lack of health

insurance impairs his ability to seek medical treatment, he has sought emergent and volunteer

treatment when needed. AR 22. Despite Davis's apparent willingness to go to seek medical

attention when needed, his medical records were "sparse and underdeveloped." *Id.*

      The ALJ gave the following facts in support of his assertions that Davis has provided

inconsistent statements and admits to activities of daily living that diminish Davis's credibility

regarding the extent of his functional limitations. On May 25, 2011, Dr. McHan, M.D., opined

that Davis demonstrated inconsistent complaints during a range of motion test for his legs. *Id.*

Dr. Belcher, Ph.D., stated that she found Davis "manipulative" regarding his suicidal "gestures."

AR 19 (quoting AR 398). A state agency medical consultant also found Davis to have a "fairly

dramatic/hyperbole" personality and stated that Davis "[a]dmits to not always being truthful."

AR 80. According to the ALJ, the overall record showed that Davis could tend to his personal

care, perform housecleaning, prepare simple meals, launder clothes, shop in stores, drive a car,

play musical instruments, care for animals, and garden. *Id.*

      As the ALJ noted, Davis's complaints of chronic pain conflict with the level of activity

he has reported to his doctors. The ALJ also pointed to specific inconsistencies in Davis's

medical records, such as his inconsistent complaints during a range of motion test. The record

supports the ALJ's finding that Davis sometimes gives inaccurate reports about the severity of

his conditions. The record also supports the ALJ's statements about Davis's ability to perform activities such as walking one to two miles a day (381), driving (AR 394), playing musical instruments (AR 396), caring for his chickens (AR 41, 49), and gardening (AR 396). Based on the clear, convincing, and specific reasons for discrediting Davis's reports about the intensity, persistence, and limiting effects of his symptoms, the Court finds that the ALJ properly evaluated Davis's testimony.

## C.  Medical Opinion of Dr. McHan

Davis next argues that that the ALJ improperly rejected the opinion of an examining physician, Dr. James McHan, M.D. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Lester*, 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific,

legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F.3d at 830. An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. It is error to ignore an examining physician's medical opinion without providing reasons for doing so. An ALJ effectively rejects an opinion when he ignores it. *Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996).

Dr. McHan examined Davis on May 25, 2011. AR 387. Dr. McHan diagnosed Davis with "degenerative disc disease with possible neuropathy with numbness of the left thigh, subjective." AR 392. Dr. McHan found that Davis had a maximum standing and walking capacity of less than two hours, a maximum sitting capacity of up to six hours, and a maximum lifting and carrying capacity of no more than ten pounds both occasionally and frequently. *Id.* Dr. McHan stated that Davis "is limited in all postural activities to occasional, with marked limitations." *Id.* Dr. McHan found no limitations for manipulative activities. *Id.* He noted that Davis would "probably be unsafe with heavy machinery and heights. *Id.*

The non-examining state agency medical consultant, Dr. Neal E. Berner, M.D., expressly disagreed with Dr. McHan's assessment. AR 81-85. Dr. Berner stated that Dr. McHan's opinion "is not based on objective findings" and "conflicts with the total evidence." AR 81. In contrast to

Dr. McHan, Dr. Berner found that Davis could stand and walk about six hours in an eight-hour workday. AR 81. Because a non-examining physician contradicted Dr. McHan's opinion, the ALJ was required to give "specific, legitimate reasons," supported by substantial record evidence, for discrediting Dr. McHan's opinion. *Roberts*, 66 F.3d at 184.

The ALJ gave Dr. McHan's opinion "little weight." AR 23. The ALJ gave two specific reasons for discounting Dr. McHan's opinion: (1) Dr. McHan gave too much deference to Davis's subjective complaints; and (2) Dr. McHan's opinion is inconsistent with the overall evidence in the record. The ALJ stated that Dr. McHan's opinion that Davis can stand and walk for less than two hours a day is inconsistent with Davis's reported activities of daily living, including that Davis can walk up to two miles a day, deep clean his house every Friday, and garden. *Id.* The ALJ concluded that Davis could actually stand and walk for six hours in an eight-hour workday. AR 20.

The ALJ gave specific, legitimate reasons for discounting Dr. McHan's opinion, reasons endorsed by the Ninth Circuit. *See Tommasetti*, 533 F.3d at 1040-42. The ALJ's adverse credibility determination regarding Davis's testimony supports the limited rejection of Dr. McHan's opinion because the opinion was primarily based on Davis's subjective comments concerning his condition. During his examination by Dr. McHan, Davis made subjective complaints about past experiences of lower back pain and "a piercing type of pain in the left lateral thigh and medial knee." AR 389. Dr. McHan, however, did not review any x-rays, and after performing range of motion testing, Dr. McHan found "no paravertebral muscle spasm or tenderness" and only "very slight sacroiliac tenderness bilaterally." AR 392. Dr. McHan also stated that Davis's tests showed only "[s]lightly decreased" muscle strength, bulk, and tone in the left thigh. *Id.* Under general findings, Dr. McHan made no notation about any significant

physical limitations. Additionally, Dr. McHan acknowledged that Davis exhibited "inconsistent moaning and groaning with trying to demonstrate all above range of motion." *Id.* In apparent reliance on Davis's description of his pain and despite potentially inaccurate range of motion testing, Dr. McHan concluded that Davis could stand and walk for more a maximum of less than two hours. *Id.* Dr. McHan acknowledged that his assessment of functional limitations was partially based on subjective findings. AR 391.

Further, the record does not provide support for the limitation of standing and walking for less than two hours a day. At the hearing before the ALJ, Davis testified, "Usually I take walks during the day to keep myself active, keep my heart going." AR 44. In June 2011, Davis told Dr. Belcher, Ph.D., that he gardens and works in his greenhouse. AR 396. Davis also told Dr. Belcher that he "deep cleans every Friday," although he also said that cleaning "is becoming increasingly harder for him." AR 398. According to Dr. Belcher, "Although the client reports chronic pain, he seems to maintain physical activity in his home and on his property." *Id.* Dr. McHan himself noted that Davis can walk one to two miles a day and that walking makes Davis "feel[] a little better." AR 389. In January 2011, Dr. Jay Chappel examined Davis and stated that Davis "is fairly active, walking about 2 miles a day." AR 381. This evidence provides support for the ALJ's determination that the record shows a greater level of functional capacity than Dr. McHan allowed. In sum, because the ALJ provided specific, legitimate reasons, supported by substantial record evidence, to discount Dr. McHan's opinions, the ALJ did not err in his assessment.

**D.  Step Two Findings**

Davis argues that the ALJ should have found that his depression constituted a severe impairment at step two of the sequential analysis. The step-two inquiry is a *de minimis* screening device to dispose of groundless claims. *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987); *see*

*Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (establishing that a step two impairment "may be found not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work" (emphasis in original)).

At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments; step two findings must be based upon medical evidence. 20 C.F.R. § 404.1520(a). An impairment is "not severe" if it "does not significantly limit [the claimant's] ability to do basic work activities." *Id.* "Omissions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at step two." *Harrison v. Astrue*, 2011 WL 2619504, *7 (D. Or. July 1, 2011) (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)).

To determine if Davis's depression constituted a severe impairment, the ALJ assessed Davis's capacity in four functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. AR 19-20. The ALJ described Davis's ability to tend to his personal care, perform housecleaning, prepare simple meals, do his own laundry, shop with his wife, drive a car, play instruments, and garden. AR 19. The ALJ noted "mild limitation" in social functioning and cited Dr. Belcher's examination in which Davis stated that he went to "jam" with his friends. AR 19 (citing AR 396). For concentration, the ALJ stated that medical records showed Davis could perform serial sevens with few errors and exhibited no impairment in attention and concentration. AR 20. The ALJ found no evidence of episodes of decompensation. *Id.*

As discussed previously, however, the ALJ failed to take into account the evidence from VRS. This evidence concerned the severity of Davis's depression. Because the ALJ failed to account for this potentially material evidence, the Court does not reach the question whether the

ALJ erred in determining that Davis's depression was not severe at step two. On remand, the

ALJ must consider the material evidence from VRS.

## CONCLUSION

The Commissioner's decision that Plaintiff is not disabled is REVERSED and

REMANDED for further proceedings as set forth herein.

**IT IS SO ORDERED**.

DATED this 14th day of January, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge